1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    JAMES BRIAN KISS,                        Case No.  25-cv-02346-TLT

8                        Plaintiff,

9            v.                              **ORDER GRANTING MOTION TO
                                             DISMISS**
10   FEDERAL DEPOSIT INSURANCE                Re: Dkt. No. 29
     CORPORATION, et al.,
11
                        Defendants.
12

13

14          After the *Wall Street Journal*, a Congressional committee, an Am Law 100 law firm, and

15   its own internal committee investigated complaints of misconduct, each found problems with the

16   Federal Deposit Insurance Corporation's ("FDIC") work culture.  The FDIC concluded that

17   conduct like Plaintiff James Kiss' contributed to the FDIC's workplace problem and decided that

18   change was needed.  Ultimately, the FDIC terminated Plaintiff's employment.  Instead of taking

19   accountability for his own actions, Plaintiff James Kiss asks the Court to hold his former employer

20   accountable for conducting a "witch-hunt" that unfairly singled him out because of his gender.  He

21   asks the Court to investigate the investigators.

22          The Court has; and the Court finds that Plaintiff Kiss has not demonstrated that the FDIC's

23   decision to terminate Plaintiff's employment was based on his gender.  Rather, the decision

24   appears to have been based on Plaintiff's lewd comments and inappropriate conduct in the

25   workplace.

26          Having considered the parties' briefs, the relevant legal authority, and for the reasons

27   below, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's amended complaint with

28   prejudice.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff James Brian Kiss ("Plaintiff") filed a complaint against Defendant Federal Deposit Insurance Corporation ("FDIC"), Defendants Travis Hill, Paul Worthing, and John Vogel, and Defendants Does 1 to 100 on March 6, 2025 for (1) discrimination on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (2) hostile work environment harassment on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (3) retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964; and (4) failure to prevent discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.  *See* ECF 1, Compl.

Defendants filed a motion to dismiss Plaintiff's complaint on July 7, 2025.  ECF 29. Following the parties' stipulation on July 11, 2025, for partial dismissal of the first filed complaint without prejudice, Plaintiff filed an amended complaint.  ECF 31; ECF 33.  Plaintiff's first amended complaint was filed on July 16, 2025.  ECF 33.

Plaintiff's amended complaint drops his fourth cause of action leaving only three claims: (1) discrimination on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (2) hostile work environment harassment on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (3) retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964.  *Id.*  Moreover, the amended complaint names Acting FDIC Chairman Travis Hill as the only Defendant in this action.  *Id.*  Finally, Plaintiff's amended complaint withdraws Plaintiff's request for punitive damages.  *Id.*

Upon reviewing the amended complaint, the Court determined that the motion to dismiss was not moot.  ECF 34.  The Court maintained the previously set briefing schedule for Defendants' motion to dismiss, ordering Plaintiff to file his response to Defendants' pending motion by August 4, 2025, and Defendants to file any reply by August 18, 2025.  ECF 34.

Plaintiff timely filed his opposition to Defendants' motion.  ECF 36.  Defendant timely replied.  ECF 37.

The Court held a hearing on Defendants' motion to dismiss on January 27, 2026.  ECF 49.

### B.    Factual Background

Plaintiff was a Field Supervisor for FDIC for more than 30 years.  ECF 33 ("FAC") ¶ 12. In his amended complaint, he alleges the following:

Plaintiff was first hired by FDIC as a Bank Examiner in 1992.  *Id.*

In or around 2007, Plaintiff was promoted to Supervisory Examiner where he supervised approximately ten employees.  *Id.*

In or around 2012, Plaintiff was promoted to Field Supervisor in the San Francisco Field Office where he supervised and managed approximately six supervisory examiners, administrators, a senior examiner, had over fifty indirect reports, and had the ability to promote staff members throughout his office.  *Id.*

Plaintiff received positive annual reviews, performance ratings, and numerous company awards during his employment at FDIC.  *Id.* ¶ 13. During his tenure as Field Supervisor, the San Francisco field office saw advancements in diversity, equity, and inclusion.  *Id.* ¶ 14.

In or around 2012, Plaintiff established a system for employees to submit anonymous complaints and concerns.  *Id.*  Plaintiff also sought to regularly meet with union representatives to discuss working conditions at the San Francisco Field Office.  *Id.*

Plaintiff promoted several females to key management positions, including to several roles in the second highest position in the field office.  *Id.* ¶ 14(c).

In May 2023, Plaintiff spoke with Senior Examiner Kendra Berch about her professional opportunities, role, and behavior in the San Francisco Field Office.  *Id.* ¶ 17.

In June of 2023, Berch submitted a complaint to Regional Director Kathy Moe regarding Plaintiff's behavior.  *Id*. ¶ 18(a).

On June 22, 2023, Moe informed Plaintiff that an investigation into his leadership abilities had been initiated.  *Id.* ¶ 19(a). Following Plaintiff's call with Moe, Plaintiff was escorted from FDIC premises.  *Id.* ¶ 20(a).

During the investigation, Plaintiff was temporarily reassigned to a lower position with no direct reports, where he was entitled to full pay.  *Id.* ¶ 19(b).  After reassignment, Plaintiff chose to take a combination of annual leave, sick leave, and unpaid administrative leave for the remainder

1    of the investigation.  *Id.*

2           Between July and September 2023, having not heard anything regarding the investigation,

3    Plaintiff reached out to Human Resources but was given no information about the status of the

4    investigation.  *Id.* ¶ 21(a).

5           In or around September 2023, Labor, Employment and Administration Section

6    representative Megan Borovicka ("Borovicka") called Kiss, and told him the FDIC would

7    question him over two days.  *Id.* ¶ 22(a).

8           On or around September 28 and 29, 2023, Kiss attended a meeting with Borovicka and

9    Middleton where he was questioned for approximately fourteen hours.  *Id.* ¶ 22(b).

10          During the investigation into Plaintiff's conduct, Rebecca Ballhaus, a journalist for the

11   Wall Street Journal, contacted Plaintiff about an article she was writing on the work environment

12   women faced within the FDIC.  *Id.* ¶ 25(a)

13          After initially ignoring Ballhaus's request, Plaintiff was notified by an FDIC public

14   relations representative that he was allowed to speak with Ballhaus because he would be named

15   directly in the article.  *Id.* ¶ 23(b).  Plaintiff still declined to speak with the journalist.  *Id.*

16          On November 13, 2023, the *Wall Street Journal* published an article by Ballhaus

17   describing a "toxic atmosphere" within FDIC stemming from the mistreatment of women by their

18   male counterparts and supervisors.  *Id.* ¶ 26(a). The article named Plaintiff and detailed complaints

19   made by both current and former employees about the harassment they faced from Plaintiff,

20   including harassing comments about employees' appearances, homophobic comments, and

21   comments about Plaintiff's drug use in the office.  *Id.* ¶ 24(e).

22          On November 14, 2023, the article was published in print and made the center-front page

23   of the *Wall Street Journal* above the fold.  *Id.* ¶ 24(h).

24          Plaintiff denies the truth of each of the allegations raised about him in Ballhaus' article.

25   *Id.*  ¶ 24(f).

26          On November 17, 2023, the U.S. Congress House Committee on Financial Services began

27   an investigation into the misconduct and toxic culture at the FDIC.  *Id.* ¶ 25(a).  On November 19,

28   2023, the Committee published a report titled "A Toxic Workplace: The FDIC's Culture of

United States District Court
Northern District of California

4

Misconduct Under Chair Gruenberg and Needed Reforms," detailing the prevalent issues that fostered the toxic work environment within the FDIC.  *Id*. ¶ 25(b).

The report concluded that in order to ensure the safety and stability of the financial system and promote a safe and inclusive working environment, change was needed within FDIC leadership.  *Id*. ¶ 25(d).

On November 21, 2023, FDIC established a Special Review Committee to review the FDIC's workplace culture and promote a safe working environment where all employees are able to speak out about inappropriate behavior in the workplace.  *Id*. ¶ 25(f).

In December 2023, the FDIC hired the law firm Cleary Gottlieb Steen & Hamilton, LLP to investigate the sexual harassment, discrimination and other misconduct highlighted by the Wall Street Journal Article.  *Id*. ¶ 25(g).

FDIC's internal investigation into Plaintiff's conduct took place from June 2023—before the Wall Street Journal article was published—to January 2024. Id. ¶ 26(b).

Employees in the office were interviewed about their interactions with Plaintiff and his leadership abilities.  *Id*. ¶ 21(b).  In September 2023, Plaintiff was interviewed by Human Resources Specialist Rodney Middleton and Labor Employment and Administration Section ("LEAS") representative Megan Borovicka.  *Id.* ¶ 22(a).

In or around December 2023 or January 2024, Plaintiff retained his own legal counsel to represent him in FDIC's investigation.  *Id.* ¶ 26.

On January 24, 2024, Regional Director Paul Worthing delivered a Notice of Proposed Removal ("Notice") to Plaintiff outlining nine reasons for Plaintiff's proposed removal.  *See* Declaration of Kelsey J. Helland ("Helland Decl."), Ex. B. The nine specifications alluded to Kiss using colorful language at the office, commenting about females' appearance in the office, counseling his reports, allowed sexualized banter throughout the office, raising his voice, discussing his drug use, and speaking with other employees during the pendency of the FDIC's investigation.  *Id.*

Plaintiff contests the veracity of the claims raised in the Notice of Proposed Removal, claiming that they were either (i) false, (ii) stale, from years ago, (iii) never brought to Kiss'

5

attention, or (iv), taken way out of context, or highly exaggerated. *Id.* ¶ 27(c).

The Notice, referenced throughout the Complaint, *see id.* ¶¶ 27(b), 27(d), 28(a), 28(c), also includes Plaintiff's admission to some of the charged conduct. Notice 4-5. The Notice explained that, due to Plaintiff's charged conduct and history of resistance to feedback and self-correction, Plaintiff was unfit to serve in his supervisory role and any non-supervisory roles within the FDIC. FAC ¶ 27(d); *see also* Notice 6-9.

In March 2024, Plaintiff's attorney sent a response to the Notice of Proposed Removal claiming that the Notice was improper and failed "to identify any behavior which would be grounds for immediate termination." FAC ¶ 28(a); *see also* Helland Decl. Ex. C. Plaintiff also notified FDIC of his intent to take legal action is the Notice of Proposed Removal was not reverted. *Id.* ¶ 28(c).

On March 20, 2024, Plaintiff met with New York Regional Director of Division of Risk Management Supervisions, John Vogel—the official responsible for deciding Plaintiff's proposed removal for misconduct. *Id.* ¶ 28(d). During the meeting, Plaintiff asserted that he was "a male scapegoat for issues at the FDIC." *Id.*

Following Plaintiff's response to FDIC's Notice, on April 15, 2024, FDIC issued an Amended Notice of Removal ("Amended Notice") which included four additional specifications of conduct to support Plaintiff's removal. *Id.* ¶ 29(b); *see also* Helland Decl. Ex. D.

Plaintiff responded to the Amended Notice through his attorney on April 30, 2024. *Id.* ¶ 30(a). Again, he generally disputed each instance of misconduct claiming the allegations were taken out of context or highly exaggerated. *Id.* ¶ 29(b); *see also* Helland Decl. Ex. E.

On or around May 7, 2024, following the Cleary Gottlieb Steen & Hamilton, investigation into the concerns raised in the Wall Street Journal article, the FDIC published a 234-page report describing its findings and recommending corrective actions. FAC ¶ 32(a).

On May 9, 2024, Plaintiff met with Vogel, Middleton, and Borovicka to challenge the claims in the Amended Notice. *Id.* ¶ 31(a). On May 14, 2024, Vogel issued a Notice of Decision ("Decision") which informed Plaintiff he would be removed from his position at the FDIC, effective immediately. *Id.* ¶ 33(a); *see also* Helland Decl. Ex. F. The Decision went on to explain

that Plaintiff's removal was not a product of public scrutiny.  FAC ¶ 33(c).

Plaintiff initiated the EEO process on June 25, 2024.  *Id.* ¶ 9; *see also* Helland Decl. Ex. A.  The parties were unable to resolve Plaintiff's claims administratively.  Plaintiff filed this action in federal court on May 6, 2025.  *See generally* ECF 1, Compl.

## II.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendant requests that the Court take judicial notice of the records from Plaintiff's EEO proceedings attached to the Helland Declaration under Federal Rule of Evidence 201.  ECF 29 at 5 n.5.  Alternatively, Defendant requests that the Court consider the documents because they have been incorporated by reference in Plaintiff's FAC.  ECF 49.  Plaintiff challenges the request that the Court take judicial notice of the EEO Counselor's Report found at ECF 29-1, Exhibit A, however, does not contest the remaining documents—i.e. the Notice of Proposed Removal, ECF 29-1, Ex. B, Plaintiff's Response to Notice of Proposed Removal, *id*. Ex. C, the Amended Notice of Proposed Removal, *id*. Ex. D, Plaintiff's Response to the Amended Notice of Proposed Removal, *id*. Ex. E, and Notice of Decision, *id*. Ex. F.  ECF 49.  Plaintiff does argue that the Court may not consider the content contained in the Exhibits B through F as truthful statements.  *Id.*

Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleadings.  *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018).  Doing so would convert the motion to dismiss into a motion for summary judgment.  *Id.*  The two exceptions to this rule are judicial notice under Federal Rule of Evidence 201 and the incorporation by reference doctrine.  *Id.*

Under FRE 201(b), "[t]he Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  "[I]t is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*, No. 3:14-cv-04077, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015).

Moreover, courts may consider documents outside of the complaint on a motion to dismiss where the document is central to the plaintiff's claims and the defendant attaches it to the motion

United States District Court
Northern District of California

United States District Court
Northern District of California

to dismiss.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  "The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja*, 899 F.3d at 1002; *see also Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir.2002) (taking into account newspaper article containing allegedly defamatory statement under the "incorporation by reference" doctrine where it was "central" to plaintiff's claim, defendant attached it to the motion for judgment on the pleadings, and plaintiff did not contest its authenticity); *see also Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1303 (N.D. Cal. 2020) (noting that a court may "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute").  "[A] court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Khoja*, 899 F.3d at 1003 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id*.

Here, Plaintiff alleges that the "Notice of Proposed Removal included language clearly evincing the fact that Kiss was the FDIC's fall *guy*" before quoting directly and extensively from the document. FAC ¶ 27(d) (emphasis in original).  Plaintiff goes on to reference and quote from Plaintiff's Response to Notice of Proposed Removal, the Amended Notice of Proposed Removal, and Plaintiff's Response to the Amended Notice of Proposed Removal, and Notice of Decision. Id. ¶¶ 27–33.  Plaintiff also references the content contained in a report published by the FDIC resulting from an internal investigation conducted by Cleary Gottlieb Steen & Hamilton, and quotes directly from a report entitled, "A Toxic Workplace: The FDIC's Culture of Misconduct Under Chair Gruenberg and Needed Reforms" published by the U.S. House Committee on Financial Services.  *Id*. ¶¶ 25, 32.  Plaintiff references the Notices of Proposed Removal and Notice of Decision to support his discrimination claim by asserting that some of the language in the document evinces Defendant's motivation for terminating Plaintiff's employment—namely, his gender. FAC ¶¶ 28–33.  Plaintiff also includes discussion of the specific allegations made against him in the Notices and rather than disputing each allegation, Plaintiff says that some of the

1  allegations are "(a) from years ago, (b) from out of the blue . . . (c) taken way out of context, or

2  highly exaggerated." FAC ¶ 29. Plaintiff's own statements reveal that at least some of the

3  allegations in the Notices are undisputably occurred, if taken out of context. Thus, at least some of

4  the specific grounds offered by the FDIC for Plaintiff's termination do not serve to dispute

5  pleadings in Plaintiff's FAC. The Court finds that Exhibits B through F are essential to Plaintiff's

6  claims and are relied upon by both parties in crafting their arguments. Plaintiff's discussion of this

7  content, therefore, invokes the incorporation-by-reference doctrine. *Khoja*, 899 F.3d at 1002.

8  Moreover, the fact that the Notices belong to the administrative record of Plaintiff's EEO

9  proceedings provides grounds for the Court to take judicial notice of those documents. *See Dean*

10  *v. St. Andre*, No. 24-cv-4187, 2024 WL 4733512, at *1 n.2 (N.D. Cal. Oct. 2, 2024) (A district

11  court "may take judicial notice of proceedings in other courts, both within and without the federal

12  judiciary system, if those proceedings have a direct relation to matters at issue.").

13      Accordingly, the Court finds that the Court may consider the Notice of Proposed Removal,

14  ECF 29-1, Ex. B, Plaintiff's Response to Notice of Proposed Removal, *id.* Ex. C, the Amended

15  Notice of Proposed Removal, *id.* Ex. D, Plaintiff's Response to the Amended Notice of Proposed

16  Removal, *id.* Ex. E, and Notice of Decision, *id.* Ex. F, under Rule 201 and according to the

17  doctrine of incorporation-by-reference.

18  **III.    SOVEREIGN IMMUNITY**

19      Generally, "in a suit against the United States, there cannot be a right to money damages

20  without a waiver of sovereign immunity...." *United States v. Testan*, 424 U.S. 392, 400 (1976). A

21  suit for damages against federal officers or employees in their official capacity is essentially a suit

22  against the United States and is therefore barred by sovereign immunity absent statutory consent.

23  *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985). Moreover, "[a] waiver of sovereign

24  immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*,

25  445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

26      In this case, both parties agree that Title VII "provides the exclusive judicial remedy for

27  claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820,

28  835 (1976), and that the government has waived its sovereign immunity for Plaintiff's

1  employment-related claims in Title VII of the Civil Rights Act of 1964. *See, e.g.*, 42 U.S.C.

2  2000e-16; *Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010) ("Title VII protects federal

3  employees and provides an express waiver of sovereign immunity in suits against the government

4  for discriminatory employment practices.").  In *Loeffler v. Frank*, the Supreme Court emphasized

5  that when Congress amended Title VII in 1972, it permitted "an aggrieved employee to file a civil

6  action in federal district court… with a cause of action under Title VII and effected a waiver of the

7  Government's immunity from suit."  486 U.S. 549, 558-559. (1988).

8         Accordingly, the Court finds that the doctrine of sovereign immunity does not bar

9  Plaintiff's claims.

10 **IV.    LEGAL STANDARD**

11       **A.    Motion to Dismiss**

12       Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

13 pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must

14 be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

15 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss.

16 *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts plead permit the court to draw a reasonable

17 inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to

18 provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-

19 unlawfully-harmed-me accusation." *Id.* at 678.

20       Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon

21 which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss, a

22 Plaintiffs' "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a

23 plausible chance of success.'" *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing

24 *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

25 Courts may dismiss claims that lack "sufficient facts to support a cognizable legal theory."

26 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

27 The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in

28 the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*.,

United States District Court
Northern District of California

1    519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted

2    inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063,

3    1067 (9th Cir. 2009).

### B.    Title VII of the Civil Rights Act of 1964

5         As originally enacted, Title VII did not provide a remedy for federal employees alleging

6    job-related discrimination.  Congress filled this loophole through passage of section 2000e–16 as

7    part of the 1972 amendments to Title VII.  *Brown v. Gen. Servs. Admin*., 425 U.S. 820, 825

8    (1976). Thus Title VII "provides the exclusive judicial remedy for claims of discrimination in

9    federal employment." *Id.*

10        Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on

11   race, color, religion, sex or national origin. 42 U.S.C. § 2000e et seq ("an unlawful employment

12   practice for an employer ... to discriminate against any individual with respect to his

13   compensation, terms, conditions, or privileges of employment, because of such individual's race,

14   color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1)).  This is often referred to as

15   Title VII's "disparate treatment" provision.

16        The successful plaintiff in a Title VII case must first establish a prima facie case of

17   discrimination, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), by showing that,

18   "(1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the

19   unfavorable action gives rise to an inference of discrimination." *Chappell–Johnson,* 440 F.3d at

20   488 (quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999)).  The burden then shifts to the

21   employer "to articulate some legitimate, nondiscriminatory reason" for its actions.  *McDonnell*

22   *Douglas,* 411 U.S. at 802. In reply, the plaintiff must show that the employer's proffered

23   justification is mere pretext and thus a "coverup for a . . . discriminatory decision." *Id.* at 805.

24        The Supreme Court has held that "discriminate" as referenced in the Civil Rights Act of

25   1964 meant then roughly what it means today: "To make a difference in treatment or favor (of one

26   as compared with others)."  *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657–58 (2020)

27   (citing Webster's New International Dictionary 745 (2d ed. 1954)).  Title VII's prohibition of

28   discrimination "because of ... sex" protects men as well as women. *Oncale v. Sundowner Offshore*

United States District Court
Northern District of California

*Servs., Inc.*, 523 U.S. 75, 78 (1998).   In *Johnson v. Transportation Agency, Santa Clara Cty.,* 480 U.S. 616 (1987), a male employee claimed that his employer discriminated against him because of his sex when it preferred a female employee for promotion.

In so-called "disparate treatment" cases the Court has also held that the difference in treatment based on sex must be intentional.  *Bostock*, 590 U.S. at 657–58; (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)).  "[T]aken together, an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII."  *Bostock*, 590 U.S. at 657–58.

Title VII also prohibits retaliation for opposing discrimination or for participating in Title VII proceedings and allows for claims based on a pervasively hostile work environment, as distinct from the more traditional claims based on specific adverse employment actions.  *Id*. § 2000e-3(a); *see also Kuhl v. Collins*, No. 23-cv-05604, 2025 WL 1135085, at *7 (N.D. Cal. Apr. 17, 2025).  Moreover, A plaintiff may bring a claim for hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

Before filing a Title VII claim in federal district court, a "claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency ... and receiving a right-to-sue letter."  *Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Stephens v. United Parcel Serv., Inc.*, No. 3:23-cv-06081, 2024 WL 1974548, at *2 (N.D. Cal. May 3, 2024) ("Before bringing a Title VII claim, a plaintiff must exhaust available administrative remedies by filing a timely complaint with the EEOC or an authorized state agency.") (citing *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001)).  "[T]he allegations of a plaintiff's judicial complaint must be 'like or reasonably related to the allegations' in an administrative complaint submitted to the EEO, such that they would fall within 'the scope of an EEOC investigation which [could] reasonably be expected to

United States District Court
Northern District of California

United States District Court
Northern District of California

1  grow out of the [administrative] charge of discrimination.'" *Williams v. Wolf*, No. 19-cv-00652,

2  2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451,

3  1456 (9th Cir. 1990)) (alterations in original). While compliance with the exhaustion requirement

4  does not implicate the Court's subject matter jurisdiction, *see Fort Bend Cnty., Texas v. Davis*,

5  587 U.S. 541, 551 (2019), "[Plaintiff Kiss] still must allege compliance with that requirement (or

6  waiver by the [defendant])" in order to survive a motion to dismiss. *Williams*, 2019 WL 6311381,

7  at *6.

8      Here, Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment

9  Opportunity ("EEO") on June 25, 2024. FAC ¶ 9; *see also* Helland Decl. Ex. A. The parties were

10  unable to resolve Plaintiff's claims administratively. Plaintiff subsequently filed this action in

11  federal court on May 6, 2025. *See generally* Compl.

12      Accordingly, the Court finds that Plaintiff has properly pursued administrative remedies

13  before filing this complaint.

14  **VI.    DISCUSSION**

15      **A.    Plaintiff Fails to Allege a Cognizable Discrimination Claim**

16      Plaintiff argues that he has sufficiently alleged that he faced discrimination because he has

17  plead facts to show that he was a member of a protected class who performed his job satisfactorily

18  and suffered various adverse employment actions because of his gender while female employees

19  were treated favorably during the FDIC's investigation of its workplace culture. ECF 36 at 12.

20  Defendant argues that Plaintiff fails to allege any nonconclusory facts indicating that Plaintiff's

21  gender played any role in his termination. ECF 29 at 7.

22      As discussed above, this Court must engage in a two-step inquiry to determine whether

23  Plaintiff's complaint survives. *McDonnell Douglas*, 411 U.S. at 802. First, the Court must

24  consider whether Plaintiff has plausibly alleged a prima facie case of discrimination. *Id.* Then, if

25  he has done so, the burden shifts to Defendant, and the Court must consider whether Defendant

26  has offered a non-discriminatory, and non-pretextual basis for Plaintiff's termination. *Id.*

27          **i.    Plaintiff's Discrimination Claim Fails to Plausibly Allege a Prima Facie Case
            of Discrimination.**

28

United States District Court
Northern District of California

1    First, the Court must determine whether Plaintiff has plausibly alleged a prima facie case

2  of discrimination.  Defendant argues that Plaintiff was terminated because of his own conduct

3  rather than his gender.  ECF 29 at 8–9.  Plaintiff argues that he has sufficiently demonstrated that

4  he was terminated because of his gender.  ECF 36 at 13.

5    "[D]isparate-treatment cases present the most easily understood type of discrimination and

6  occur where an employer has treated [a] particular person less favorably than others because of a

7  protected trait. A disparate-treatment plaintiff must establish that the defendant had a

8  discriminatory intent or motive for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. 557,

9  577 (2009) (quoting *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, (1977).  A plaintiff

10  alleging disparate treatment makes out a prima facie case under McDonnell Douglas by showing:

11  (1) he is a member of a protected class; (2) he was qualified for her position; (3) he experienced an

12  adverse employment action; and (4) similarly situated individuals outside his protected class were

13  treated more favorably or other circumstances surrounding the adverse employment action give

14  rise to an inference of discrimination. *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117,

15  1155 (9th Cir. 2025) (citing *Hittle v. City of Stockton*, 101 F.4th 1000, 1011–12 (9th Cir. 2024);

16  *see also Chuang v. Univ. of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (same).

17    The fourth element—that the plaintiff was subjected to an adverse employment action

18  because of her membership in a protected class—can be alleged either through direct evidence of

19  discrimination, such as a supervisor's derogatory comment about her race or gender, *see, e.g.,*

20  *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence,

21  which may include allegations that similarly situated individuals outside the plaintiff's protected

22  class were treated more favorably or that other circumstances surrounding the at-issue

23  employment action give rise to an inference of discrimination, *see Surrell v. Cal. Water Serv. Co.*,

24  518 F.3d 1097, 1105-06 (9th Cir. 2008); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th

25  Cir. 2010).  Employees "are similarly situated when they have similar jobs and display similar

26  conduct." *Vasquez v. County of Los Angeles*, 349 F. 3d 634, 641 (9th Cir. 2003).

27    Here, Plaintiff attempts to create an inference of discrimination through a series of events

28  which he suggests would not have occurred if he were a female.  *See* ECF 36 at 11 ("Had Kiss not

1  been a male manger, he would not have been terminated).  First, Plaintiff's allegation that the

2  investigation against him was a "witch-hunt" resulting from "fabricated complaints" in pursuit of

3  FDIC's goal of "getting rid of its male managers" is similarly conclusory.  *Id.*  Plaintiff's own

4  filings reveal that Plaintiff contests some, but not all, of the allegations offered in the FDIC's

5  Notice of Proposed Removal.  *See* FAC; ECF 36.  Any one of the thirteen offered specifications

6  provide an obvious alternative explanation for the termination of Plaintiff's employment.  *See also*

7  *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("As between that 'obvious alternative explanation' . .

8  . and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a

9  plausible conclusion.").

10  Moreover, Plaintiff's allegation that FDIC's investigation into Plaintiff stemmed from a

11  newfound enthusiasm to replace male managers as a reaction to Ms. Ballhaus' article in the *Wall*

12  *Street Journal* cannot plausibly be true because Plaintiff was being investigated months before

13  Ms. Ballhaus' article was published.  *See* ECF 29-1 Ex. B; *see also* FAC ¶¶ 19–21.  Plaintiff's

14  allegation that Berch's complaint was motivated by a desire to get rid of a male manager in hopes

15  of having greater occupational success is a mere conclusion, and is contrary to the incorporated

16  record which suggests that Ms. Berch was genuinely upset with Plaintiff's conduct.  *See* ECF 29-

17  1, Ex. B.  The Court is not required to "'assume the truth of legal conclusions merely because they

18  are cast in the form of factual allegations.'"  *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-cv-

19  06064, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d

20  1061, 1064 (9th Cir. 2011) (per curiam)).  Nor does the Court accept "allegations that are merely

21  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec.*

22  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

23  Additionally, the decision maker in Plaintiff's termination decision belongs to the same

24  class as Plaintiff for purposes of Plaintiff's discrimination claim.  This fact dissipates the strength

25  of any claim Plaintiff could have for workplace discrimination.  *See Mattson v. Home Depot, Inc*.,

26  No. 11-cv-0533, 2012 WL 2342948, at *4 (C.D. Cal. June 20, 2012) ("any inference of

27  discrimination is undermined when the decision-maker is a member of the same protected class").

28  Plaintiff's allegation that females were treated better because they were not investigated and

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1    because the public condemnation directed only at male employees is unavailing.  The Notice of

2    Proposed Termination and Amended Notice provides a thorough and detailed report of Plaintiff's

3    conduct throughout his time at FDIC.  While courts may look to the elements of the prima facie

4    case "to decide, in light of judicial experience and common sense, whether the challenged

5    complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is

6    plausible on its face," *Achal*, 114 F. Supp. 3d at 796-97, "[t]hreadbare recitals of the elements of a

7    cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556

8    U.S. 662, 678 (2009).  The administrative record provided at ECF 29-1 reveals that FDIC made

9    the decision to terminate Plaintiff because of Plaintiff's own conduct, not out of a bias in favor of

10   female employees.  A common sense reading of the allegations in the complaint and the

11   incorporated documents suggests that FDIC did not discriminate against Plaintiff in terminating

12   Plaintiff's employment.  The well-pleaded facts suggest that, more likely, Plaintiff was terminated

13   because he made lewd comments, engaged in inappropriate conduct towards colleagues, and took

14   forceful defensive steps in response to Defendant's investigation.

15        Accordingly, the Court finds that Plaintiff's amended complaint does not plausibly state a

16   prima facie case for discrimination in violation of Title VII of the Civil Rights Act of 1964.

17        **B.    Plaintiff Fails to Allege a Cognizable Hostile Work Environment Claim**

18        Plaintiff's second cause of action depends on the Court finding that Defendant subjected

19   Plaintiff to a hostile work environment.  ECF 36 at 13.  Plaintiff argues that FDIC engaged in

20   harassing conduct against Plaintiff by opening an investigation into Plaintiff's alleged conduct,

21   escorting him out of his office with armed guards during this investigation, and subsequently

22   terminating his employment.  *Id.* at 14.  Plaintiff further alleges that he was targeted and subject to

23   this conduct because of his gender.  *Id.*  Defendant contends that Plaintiff's participation in

24   FDIC's investigation into his misconduct cannot constitute actionable Title VII harassment based

25   on sex.  ECF 27 at 2.

26        To state a cognizable Title VII claim for hostile work environment, Plaintiff must plausibly

27   allege that: (1) he was subjected to a hostile work environment; and (2) FDIC was liable for the

28   harassment that caused the hostile environment to exist.  *Fried v. Wynn Las Vegas*, LLC, 18 F.4th

643, 647 (9th Cir. 2021).  To show that Plaintiff was subjected to a hostile work environment based on sex under the first prong of this two-part test, Plaintiff must plausibly allege that (1) he was subjected to verbal or physical conduct of a sexual nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.  *Id*.

The EEOC guidelines describe the types of workplace conduct which may be actionable as harassment under Title VII as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 C.F.R. § 1604.11. "A single incident of harassment 'can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis,' but for a single incident to suffice, it 'must be extremely severe,' *Fried v. Wynn Las Vegas*, LLC, 18 F.4th 643, 648 (9th Cir. 2021) (citing *Little v. Windermere Relocation, Inc*., 301 F.3d 958, 967 (9th Cir. 2002) and *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000)).  When severity is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Id*. (citing *Davis v. Team Elec. Co*., 520 F.3d 1080, 1096 (9th Cir. 2008)). However, in analyzing the objective hostility of a working environment, we must look to the totality of the circumstances surrounding the plaintiff's claim. *Okonowsky v. Garland*, 109 F.4th 1166, 1179 (9th Cir. 2024).  Other factors courts have used to determine whether an environment is sufficiently hostile or abusive include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993).

Here, Plaintiff does not identify a specific instance of harassment.  Instead, he highlights his general treatment once the FDIC decided to investigate internal complaints.  ECF 36 at 14. This alone constitutes grounds for dismissal.  *See Bearden v. Alameda Cnty*., No. 4:18-cv-02495, 2019 WL 13067383, at *5 (N.D. Cal. Apr. 5, 2019) (granting motion to dismiss for failure to allege what specific discriminatory conduct occurred and how it may have created an abusive working environment).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

However, diving deeper into Plaintiff's allegations, the Court notes that during the entirety of the investigation, Plaintiff chose to take leave from the FDIC and was incapable of being subject to conduct actionable under Title VII.  FAC ¶ 26(b).  Plaintiff's argument that the initiation of the investigation into his misconduct itself constitutes actionable Title VII harassment based on his sex is unpersuasive.  The Court notes the reasoning offered in a case with similar facts in Virginia which led to dismissal:

> Plaintiff's charge that he was subjected to a hostile work environment by the accusations made against him in the sexual harassment investigation is a perversion of the hostile work environment standard. Defendant investigated reports that Plaintiff had placed other employees in unwelcome situations because of sex. The fact that Defendant thoroughly investigated those claims and brought them to Plaintiff's attention, while protecting the identities of the accusers, does not afford Plaintiff a claim for a hostile work environment. To find otherwise would hamstring an employer's ability to investigate harassment claims in the workplace in a fashion which balances the interests of due process and protecting victims.

*Miller v. Gruenberg*, No. 1:16-cv-856, 2017 WL 1227935, at *13 (E.D. Va. Mar. 31, 2017), *aff'd as modified*, 699 F. App'x 204 (4th Cir. 2017).  While the Court recognizes that the Virginia court's reasoning is only persuasive authority, the Court finds the rationale compelling.  In fact, the FDIC likely owed a duty to investigate the complaints of employees like Ms. Berch into Plaintiff's conduct.  *See Intlekofer v. Turnage*, 973 F.2d 773, 779 (9th Cir. 1992) ("We hold that employers have long been on notice . . . that they are required under Title VII to intervene promptly and effectively to put an end to workplace sexual harassment").  The FDIC should not be punished for taking seriously the concerns of its employees.  Any resulting investigation grounded in well-founded concerns, no matter how unwelcome, cannot constitute actionable harassing conduct.

Accordingly, the Court finds that Plaintiff has not sufficiently alleged that he was subject to a hostile work environment as a result of the FDIC's response to reports of misconduct.

### C.    Plaintiff Fails to Allege Retaliation for Engaging in a Protected Activity

Plaintiff argues that, in contravention of federal law, he was terminated in retaliation for

1   testifying during the FDIC's Title VI investigation, seeking legal counsel and representation

2   during this investigation, threatening to bring legal action against FDIC, and complaining about

3   his removal from FDIC.  ECF 36 at 17.  He argues that the "participation clause [of Title VII] is

4   expansive and seemingly contains no limitations," such that the activities listed above are

5   "protected activit[ies]" within the meaning of the statute.  *Id.* at 16.  Defendant argues that

6   Plaintiff's participation in and response to the FDIC's investigation into Plaintiff's own

7   misconduct pursuant to the FDIC's internal policy does not constitute protected activity under the

8   statute.  ECF 37 at 3.

9           Title VII forbids discrimination by employers based on an individual's race, color, religion,

10  sex, or national origin.  42 U.S.C. § 2000e-2.  To state a claim for retaliation, a plaintiff must

11  allege he (1) engaged in a protected activity, (2) his employer subjected him to a materially

12  adverse employment action, and (3) a causal link exists between the protected activity and the

13  adverse action.  *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir.

14  2013) (citations omitted).  Specifically, 42 U.S.C. § 2000e-3 prohibits an employer from

15  retaliating against an employee "because he has made a charge, testified, assisted, or participated

16  in any manner in an investigation, proceeding, or hearing under this subchapter."  (Emphasis

17  added) (the "participation clause").  As the Ninth Circuit has observed, the participation clause

18  prohibits "retaliation for the employee's participation in the machinery set up by Title VII to

19  enforce its provisions."  *Hashimoto v. Dalton*, 118 F. 3d 671, 680 (9th Cir. 1997) (quoting *Silver

20  v. KCA, Inc*., 586 F.2d 138, 141 (9th Cir. 1978)).  "The purpose of the [participation clause] is to

21  protect the employee who utilizes the tools provided by Congress to protect his rights."  *Id*.

22  (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978)).

23          Plaintiff has not made out a prima facie case for retaliation because he has not alleged that

24  the FDIC responded to his participation in a protected activity.  Plaintiff's participation in the

25  FDIC's investigation into his misconduct is not part of the machinery set up by Title VII to

26  enforce its provisions."  *Hashimoto*, 118 F. 3d at 680; *see also Learned v. City of Bellevue*, 860

27  F.2d 928, 932 (9th Cir. 1988) (the conduct that the employee allegedly opposed "must fairly fall

28  within the protection of Title VII to sustain a claim of unlawful retaliation," or if basis of claim is

United States District Court
Northern District of California

United States District Court
Northern District of California

that employee participated in an investigation or proceeding involving charges of discrimination, "the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII"). Here, the FDIC's investigated Plaintiff for his own misconduct pursuant to its own policy and the complaints they received. Plaintiff's conclusory allegation that his response to the investigation led to his termination does not support a claim under Title VII. *See, e.g., EEOC v. Rite Way Service. Inc*., 819 F.3d 235, 239 n.2 (5th Cir. 2016) ("Every Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause.") (cleaned up) (quoting *Townsend v. Benjamin Enters., Inc*., 679 F.3d 41, 49 (2d Cir. 2012)).

While a plaintiff is not required to plead a prima facie case of discrimination or retaliation in order to survive a motion to dismiss, *Sheppard v. David Evans & Assoc*., 694 F.3d 1045, 1050 n.2 (9th Cir. 2012); *Lacayo v. Donahoe*, 2015 WL 3866070, at *12 (N.D. Cal. June 22, 2015), when a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achal v. Gate Gourmet, Inc*., 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015) (citations omitted). Here, Plaintiff has not plausibly demonstrated that the FDIC's decision to terminate his employment stemmed from his response to the investigation. Plaintiff disputes making only some lewd or inappropriate comments to colleagues during his time at the FDIC, arguing that other conduct is too old to be relevant or taken out of context. FAC ¶¶ 27–29. The FDIC had a different perspective. The FDIC credited the allegations of repeated and uncouth comments from Plaintiff reported by individuals who worked with Plaintiff in reaching its decision to terminate his employment. The Court finds that the complaint fails to state a claim for relief that is plausible on its face in light of the common sense justification offered for Plaintiff's termination.

Accordingly, the Court finds that Plaintiff has not plausibly alleged a claim for retaliation under Title VII.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## VII.    LEAVE TO AMEND

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)).

The Court finds that the FDIC has provided straightforward reasons for its decision to terminate Plaintiff's employment: a slew of complaints about Plaintiff's comments and conduct in the workplace.  As such, Plaintiff's contention that the FDIC's decision was instead motivated by animus towards Plaintiff's gender is implausible on its face.  Plaintiff articulated, during oral argument, that he could amend the complaint to identify which of the allegations in the Notice of Proposed Removal were false, however, if even a fraction of the thirteen specifications offered for the FDIC's termination decision were true, there is a an "obvious alternative explanation" for the termination of Plaintiff's employment than gender-based discrimination. *See also Iqbal*, 556 U.S. at 682 (2009).  In fact, there are several.  *See* ECF 29-1, Ex. B.  Plaintiff cannot provide factual support for his contention and, in this case, leave to amend would be futile.  *Pryor v. Heart N Soul Tax Servs. of Vallejo, Inc.*, 402 F. App'x 276, 277 (9th Cir. 2010) (finding "[t]he district court did not abuse its discretion by dismissing the first amended complaint" raising claims for hostile work environment and retaliation "without leave to amend after concluding that further amendment would be futile" (citing *Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1087–88 (9th Cir.2002) (dismissal without leave to amend is not an abuse of discretion where further amendment would be futile); *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051–52 (9th Cir.2008) (amendment futile where plaintiffs filed an amended complaint containing the same defects as their original complaint).

**VIII.     CONCLUSION**

　　For the reasons stated above, Plaintiff's first amended complaint for (1) discrimination on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (2) hostile work environment harassment on the basis of sex/gender in violation of Title VII of the Civil Rights Act of 1964; (3) retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 is **DISMISSED** with prejudice.

　　This Order resolves ECF 29.


　　IT IS SO ORDERED.

Dated: January 30, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

22